# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FSS DEVELOPMENT CO., LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>APACHE TRIBE OF OKLAHOMA, a federally recognized Indian tribe, *et al.*,<br><br>Defendants. | Case No. CIV-17-661-R |

## ORDER

Before the Court are Defendants' Motion to Stay Pending Exhaustion of Tribal Court Remedies (Doc. 21) and Defendants' Motion to Dismiss (Doc. 22). Plaintiff FSS alleges that on December 20, 2010, it (1) entered into an agreement with Defendant Apache Tribe of Oklahoma ("the Tribe") to develop a casino called the Red River Project on Apache land, and (2) loaned the Tribe $2.2 million to cover development expenses in exchange for a promissory note. In the summer of 2017, Plaintiff sued the Tribe, the Apache Business Committee ("ABC") that allegedly negotiated the contracts for the Tribe, four individual ABC members, and a Tribe consultant for tortious interference with contract, breach of contract, and declaratory judgment. The Tribe then sued FSS in Apache tribal court for declaratory judgment that the agreements are void under federal and tribal law and, alternatively, for breach of contract. The Court, concerned about subject matter jurisdiction, ordered a hearing on three issues to determine whether to dismiss or stay the case.

The main issue is complete preemption initiated by Defendants' Indian Gaming Regulatory Act ("IGRA") defenses—the parties agree that the Tribe defeats diversity jurisdiction, but dispute whether the IGRA's completely preemptive scope provides the Court with federal question jurisdiction. For the following reasons, the Court dismisses Plaintiff's claims against the Tribe and ABC and stays Plaintiff's tortious interference claim against the individual Defendants pending exhaustion of tribal remedies.

I. Background

The Court takes as true the following allegations contained in the Amended Complaint, Doc. 8. The Apache Tribe vested the ABC with authority to engage FSS to assist the Tribe in developing the Red River Project, a Class II and III gaming facility on Apache land near the Oklahoma-Texas border. Doc. 8, at 3–4; Doc. 8-3. On December 20, 2010, FSS allegedly entered into a development agreement (Doc. 8-1) and executed a promissory note (Doc. 8-2) with the Tribe through its representative, ABC Chairman Louis Maynahonah. Doc. 8-3, at 2.

The development agreement provided FSS with exclusive development rights, a "Construction Management Fee" equal to 4% of the total amount of the Red River Project's construction and development costs, and 12% of the net winnings from the Project, among other benefits. *See* Doc. 8-1, at 19–20. In return, FSS promised to make an interim loan of $2.2 million and to "obtain financing for the design, development, construction and initial equipping of the Gaming Facility, and to furnish technical experience and expertise . . . ." *Id.* at 2. The agreement contained a limited waiver of sovereign immunity, consent to jurisdiction in the U.S. District Court for the Western District of Oklahoma, and guarantee

that the Tribe will not revoke or limit its sovereign immunity waiver. *Id.* at 30–32. It also contained various representations, warranties, and covenants intended to ensure enforceability of the contract under tribal and federal law. *See generally id.* One provision states that the agreement "shall not be construed as a management contract" under the IGRA and the parties agree that nothing in the agreement "is intended to grant" FSS "management authority or responsibilities" with respect to the Red River Project. *Id.* at 9. The parties also "agree[d] that nothing [in the development agreement or interim promissory note] is intended to grant or may be construed to grant [FSS] . . . any proprietary interest whatsoever" in the Project. *Id.* at 9.

Needless to say, the agreement did not work out as planned. After allegedly devoting substantial resources to successfully meeting its development obligations, FSS claims that Defendants failed to obtain required approval for title and heirship issues, submit a lease to the Bureau of Indian Affairs, or review term sheets for financing. Doc. 8, at 9–11. The dispute appears to originate from turnover in ABC leadership and an agreement between a third-party management group and individual members of the ABC, Defendants herein, to sabotage the Red River Project for the benefit of a competing gaming venture. *Id.* at 10–14; Doc. 8-5, at 1–2. On October 4, 2016, a lawyer for the Tribe wrote to FSS, claiming that the development agreement is invalid and unenforceable and, alternatively, providing notice of FSS's default per the agreement's terms. Doc. 8-4 (citing Doc. 8-1, at 25–26). FSS responded in kind later that month with notice of the Tribe's default. Doc. 8-5 (citing Doc. 8-1, at 23–25).

On June 16, 2017, Plaintiff FSS sued Defendants the Tribe, the ABC, and Bobby Komardley, an ABC member, in this court. Doc. 1. Plaintiff amended its complaint on September 5 to add ABC members Cheryl Wetselline, Justus Perry, and Donald Komardley, as well as Tom Julian, a consultant for the Tribe. Doc. 8. The Amended Complaint alleges:

- Count 1: Defendants Julian and individual ABC members tortiously interfered with the development agreement;[1]
- Count 2: FSS is entitled to declaratory judgment that:
    - (a) the development agreement is valid and enforceable;
    - (b) FSS is not in default of the agreement;
    - (c) the development agreement can only be rescinded in accordance with its terms;
    - (d) the Tribe and the ABC are contractually prohibited from taking action, except as prescribed by the development agreement, that directly or indirectly modifies or terminates the agreement;
    - (e) the Tribe and the ABC are contractually required to "take all actions necessary to ensure that [the] Agreement shall remain in full force and effect at all time";

---

[1] Plaintiff is suing these members in their individual capacity. The Court finds unavailing Defendant's argument that the individual ABC Defendants retain sovereign immunity from Plaintiff's tortious interference claim. *See* Doc. 22, at 15; Doc. 26, at 12–13. Plaintiff alleges that these Defendants acted outside the scope of—or directly adverse to—their official obligations as members of the Tribe's business committee by interfering with the Tribe's allegedly binding contract. The Court also notes Defendant's representation that since FSS filed its complaint, two of these individual ABC Defendants have been voted out of the ABC. *See* Hearing Transcript, Doc. 30, at 19.

- Count 3: the Tribe breached the development agreement

*Id.* at 14–19.

Then on September 25, 2017, the Tribe sued FSS in the Court of Indian Offenses for the Apache Tribe of Oklahoma in Anadarko, Oklahoma ("Tribal Court").[2] Doc. 21-1. The Tribe seeks a declaratory judgment from the Tribal Court that the development agreement is void or unenforceable because (1) the Tribe did not validly waive sovereign immunity or delegate authority to execute the agreement under the Apache Tribe Constitution, nor did Chairman Maynahonah actually sign the development agreement; (2) the U.S. Secretary of the Interior did not approve the development agreement as required under federal law; (3) the development agreement is an unapproved management contract under the IGRA; (4) the development agreement violates the IGRA's requirement that the Tribe retain sole proprietary interest in any gaming facility; (5) FSS has not and cannot obtain a gaming license from the Apache Gaming Commission. *Id.* at 5–11. Alternatively, if the Tribal Court does find the agreement valid under federal and tribal law, the Tribe claims that FSS breached the contract. *Id.* at 12.

Defendants move to dismiss Plaintiff's suit under Federal Rules of Civil Procedure 12(b)(1) (for lack of subject matter jurisdiction), 12(b)(6) (for failure to state a claim), and 12(b)(7) (for failure to join a party who cannot be joined). Doc. 22. Alternatively, if the Court finds there is subject matter jurisdiction, Defendants move to dismiss or stay the case due to the tribal exhaustion rule, pending a final decision by the Tribal Court. Doc. 21.

---

[2] The Tribal Court is a federally administered court exercising jurisdiction over the dispute pursuant to 25 C.F.R. §§ 11.100(b)(1), 11.116(a)(2), and 1151. *See* Doc. 21-1.

On May 7, 2018, the parties argued the following three issues before the Court:

(1) Given that each of Plaintiff's three state law claims requires the Court to decide whether the development agreement violates the IGRA, do Plaintiff's claims "intrude on the tribe's regulation of gaming," such that the IGRA completely preempts them? *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 550 (8th Cir. 1996). Accord particular attention to whether any claim is more intrusive than the others.

(2) If the IGRA completely preempts all of Plaintiff's claims, must the Court dismiss the case outright, or does the IGRA provide Plaintiff a private right of action? *See Hartman v. Kickapoo Tribe Gaming Comm'n*, 176 F. Supp. 2d 1168, 1175 (D. Kan. 2001), *aff'd*, 319 F.3d 1230 (10th Cir. 2003) (citing various authorities rejecting an IGRA private right of action).

(3) If none of Plaintiff's claims are completely preempted and the Court lacks federal question jurisdiction, should the Court exercise its Rule 21 discretion, dismiss the non-diverse Tribe and Apache Business Committee ("ABC"), and proceed with Plaintiff's remaining claim for tortious interference with contract against Defendants Julian and the ABC members in their individual capacities, *or* are the Tribe and the ABC indispensable parties under Rule 19(b)? *See Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1371 (10th Cir. 1998).

Doc. 27. *See* Hearing Transcript, Doc. 30.

## II. Discussion

The Court has subject matter jurisdiction over diversity cases under 28 U.S.C. § 1332 and causes of action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The parties agree that the Tribe's presence in this suit defeats diversity jurisdiction. *See* Doc. 22, at 10–13; Doc. 25, at 10. Federal question jurisdiction depends on the "well-pleaded complaint" rule—does "'the plaintiff's statement of his own cause of action show[] that it is based' on federal law"? *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (quoting *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996)). Plaintiff brings claims based on strictly

state law: tortious interference with contract, declaratory judgment, and breach of contract. *See Mosaic*, 97 F.3d at 1339 (quoting *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir.1996)); ("[T]he Declaratory Judgment Act 'does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction.'"); *Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989) (Nor does "[t]he possible existence of a tribal immunity defense . . . convert Oklahoma . . . claims into federal questions . . . ."). To defend against Plaintiff's claims related to the development agreement, however, Defendants raise the IGRA. Doc. 21-1, at 8–10.

"Ordinarily, '[n]either the plaintiff's anticipation of a federal defense nor the defendant's assertion of a federal defense is sufficient to make the case arise under federal law.'" *Mosaic*, 693 F.3d at 1204 (quoting *Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006)). Nonetheless, there are "two recognized exceptions to the well-pleaded complaint rule." *Id.* at 1203. For Defendants' IGRA defenses to provide federal question jurisdiction, Plaintiff bears the burden to show that either (1) Plaintiff's "state-law claims are completely preempted, or (2) there is a substantial, disputed federal-law issue necessarily embedded in [Plaintiff's] state-law claims." *Id.* at 1203–04. Plaintiff argues the first exception, complete preemption:[3] its state law claims require a determination of Defendants' IGRA defenses—that the development agreement is an unapproved

---

[3] Defendants seem to confuse these two doctrines, complete preemption and substantial federal question. *See* Doc. 26, at 4–8. The inquiries may overlap, but the Court addresses only the well-pleaded-complaint exception that Plaintiff has raised: complete preemption doctrine.

7

management contract and violates the IGRA's requirement that the Tribe retain sole proprietary interest in any gaming facility—and therefore "fall within the preemptive scope" of the IGRA.[4] Doc. 25, at 10–11.

## A. Complete Preemption of Plaintiff's State Law Claims

Complete preemption is "[t]he rule that a federal statute's preemptive force may be so extraordinary and all-encompassing that it converts an ordinary state-common-law complaint into one stating a federal claim for purposes of the well-pleaded-complaint rule." *Mosaic*, 693 F.3d at 1204 (quoting *Black's Law Dictionary* 324 (9th ed. 2009)). The doctrine is "rare," and Courts should be "reluctant to find that extraordinary pre-emptive power." *Id.*; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). Further, "[t]he term 'complete preemption' is somewhat misleading because even when it applies, all claims are not necessarily covered." *Gaming Corp.*, 88 F.3d at 547.

> [F]or the complete-preemption doctrine to apply, the challenged claims must "fall within the scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area." *Hansen*, 641 F.3d at 1221. That is, the asserted federal statute must "so pervasively regulate [its] respective area[ ]" that it leaves no room for state-law claims.

*Mosaic*, 693 F.3d at 1205.

The first federal appellate court to consider whether the IGRA completely preempts state law was the Eighth Circuit in *Gaming Corp.*, 88 F.3d at 543–44, 547. It considered the IGRA's text, structure, legislative history, and jurisdictional framework, and found that

---

[4] Plaintiff first argued that only "FSS's breach of contract claim presents a federal question" based on the IGRA's preemptive scope, but conceded at the hearing that each claim necessitates the same IGRA inquiry to determine if the development agreement is valid and enforceable. Doc. 25, at 11; Doc. 30, at 5–6.

the IGRA "has the requisite extraordinary preemptive force necessary to satisfy the complete preemption exception to the well-pleaded complaint rule."[5] *Id.* at 547. Specifically, it found that only state law claims that "intrude on the tribe's regulation of gaming" fall within the IGRA's preemptive scope. *Id.* at 550. The Tenth Circuit has not specifically addressed this issue—it had occasion to consider the preemptive force of the IGRA, but only in the context of "ordinary preemption," not complete preemption.[6] *Mosaic*, 693 F.3d at 1203 n.4; *see Pueblo of Pojoaque v. New Mexico*, 863 F.3d 1226, 1232 (10th Cir. 2017) (pertaining to "a state's off-reservation regulation of gaming licensees in their dealings with non-Indian gaming operators"). *But see Pueblo*, 863 F.3d at 1238 (Bacharach, J., dissenting) ("IGRA's preemptive sweep is broad.").

Various courts have since applied the Eighth Circuit's tribal-gaming-impact test for the IGRA's completely preemptive scope.[7] The Court therefore asked the parties to address

---

[5] One of the stated purposes of IGRA is "the establishment of Federal standards for gaming on Indian lands." 25 U.S.C. § 2702(3). The statute also declares that "Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity." 25 U.S.C. § 2701(5). IGRA establishes a federal National Indian Gaming Commission (NIGC) to oversee regulation, licensing, background checks of key employees, and other facets of gaming. *The NIGC can approve or disapprove* license applications, *management contracts*, and tribal gaming ordinances. It can suspend gaming, impose fines, perform its own background checks of individuals, and request the aid of other federal agencies. The commission also has a broad grant of regulatory authority.

*Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 544–45 (8th Cir. 1996) (emphasis added); *see also* Congressional Findings, 26 U.S.C. § 2701; Declaration of Policy, 26 U.S.C. § 2702.

[6] "Ordinary preemption" is distinct from complete preemption, which "makes a state-law claim 'purely a creature of federal law." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012) (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011)). "There are three forms of [ordinary] preemption that are frequently discussed in judicial decisions— express preemption, conflict preemption, and field preemption"—none of which provide federal question jurisdiction or apply to this case. *Id.*

[7] *See, e.g.*, *Osceola Blackwood Ivory Gaming Grp., LLC v. Picayune Rancheria of Chukchansi Indians*, 272 F. Supp. 3d 1205, 1212 (E.D. Cal. 2017); *Alabama v. PCI Gaming Auth.*, 15 F. Supp. 3d 1161, 1171

whether Plaintiff's claims "intrude on the tribe's regulation of gaming." Doc. 27, at 1 (quoting *Gaming Corp.*, 88 F.3d at 550). At the hearing, Defendants conceded "that complete preemption applies [to] all of the claims that [Plaintiff] alleges . . . ." Doc. 30, at 14–15. Despite this concession, the Court remains skeptical of Plaintiff's complete preemption argument.[8] Nonetheless, the scope of the IGRA's complete preemption is ultimately immaterial—without an IGRA private cause of action,[9] Plaintiff lacks a substitute for his allegedly preempted state law claims.

Plaintiff argues that through complete preemption, its "state law claims are converted into federal question claims," irrespective of whether the IGRA expressly

---

(M.D. Ala. 2014); *Sungold Gaming (U.S.A.) Inc. v. United Nation of Chippewa, Ottawa, & Pottawatomi Indians of Michigan, Inc.*, No. 1:99-CV-181, 1999 WL 33237035, at *3 (W.D. Mich. June 7, 1999).

[8] It is unclear how a mere factual inquiry into the development agreement would disrupt tribal gaming, thereby providing federal question jurisdiction over an otherwise state law claim. Most of Plaintiff's authority for complete preemption—*Gaming Corp.* included—appears to involve direct challenges to a tribe's gaming process or how it contracted with non-tribes, whereas this case concerns whether the Tribe abided by its own representations to obtain the necessary authorization to proceed with the Red River Project. *See Comanche Indian Tribe Of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1132 n.4 (10th Cir. 2004); *Alabama v. PCI Gaming Auth.*, 15 F. Supp. 3d 1161, 1170–72 (M.D. Ala. 2014); *Abdo v. Fort Randall Casino*, 957 F. Supp. 1111, 1114 (D. S.D. 1997); *Great W. Casinos, Inc. v. Morongo Band of Mission Indians*, 88 Cal. Rptr. 2d 828, 832–33, 842 (Cal. Dist. Ct. App. 1999). Various courts have also declined to extend complete preemption to similar state law claims. *See Iowa Mgmt. & Consultants, Inc. v. Sac & Fix Tribe of Mississippi in Iowa*, 207 F.3d 488, 489 (8th Cir. 2000); *Osceola Blackwood Ivory Gaming Grp., LLC v. Picayune Rancheria of Chukchansi Indians*, 272 F. Supp. 3d 1205, 1212–1214 & n.4 (E.D. Cal. 2017); *Rumsey Indian Rancheria of Wintun Indians of Cal. v. Dickstein*, No. 07-CV-2412-GEB-EFB, 2008 WL 648451, at *4 (E.D. Cal. Mar. 5, 2008); *Sungold Gaming*, 1999 WL 33237035, at *3; *Gallegos v. San Juan Pueblo Bus. Dev. Bd., Inc.*, 955 F. Supp. 1348, 1349–50 (D. N.M. 1997); *cf. U.S. ex rel. The Saint Regis Mohawk Tribe v. President R.C.—St. Regis Mgmt. Co.*, 451 F.3d 44, 51 n.6 (2d Cir. 2006); *Cty. of Madera v. Picayune Rancheria of Chukchansi Indians*, 467 F. Supp. 2d 993, 1002 (E.D. Cal. 2006). The Court also finds distinct the decisions weighing how to treat a final NIGC decision, an issue that cuts more to the heart of the IGRA's regulatory gaming scheme than the Court's preliminary question of whether the development agreement triggers the statute at all. *See Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1421 (8th Cir. 1996); *Hankins v. Fort Sill Apache Tribe of Okla.*, No. CIV-03-1191-L (W.D. Okla. June 2, 2009); *Sharp Image Gaming, Inc. v. Shingle Springs Band of Miwok Indians*, 223 Cal. Rptr. 3d 362, 379–82, 385–99 (Cal. Dist. Ct. App. 2017), *petition for cert. filed* (U.S. March 22, 2018) (No. 17-1330).

[9] It is clear to the Court, and the parties agree, that no plausible reading of the IGRA could support a private right of action. *See* 29 U.S.C. §§ 2701–2721; Doc. 30, at 9, 16.

provides a substitute private cause of action. Doc. 30, at 9. The Supreme Court's opinion in "*Caterpillar*, read alone, is susceptible to such an interpretation." *Schmeling v. NORDAM*, 97 F.3d 1336 (10th Cir. 1996) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)). After all, the Eighth Circuit concurs and interprets the complete preemption question "separate from the issue of whether a private remedy is created under a federal statute." *Gaming Corp.*, 88 F.3d at 547. However, the Tenth Circuit directly rejected Plaintiff's argument in *Schmeling* when it found the two issues intertwined:

> We do not read *Caterpillar* as derogating the statement in *Metropolitan Life* that the touchstone of the federal district court's removal jurisdiction is . . . the intent of Congress. The tension in the Supreme Court cases can be resolved by reading 'complete preemption' as a term of art. We read the term not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of *the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action*, thereby manifesting Congress's intent to permit removal.

*Schmeling*, 97 F.3d at 1342 (emphasis added). Thus, "interests of 'comity and prudence'" dictate that courts should "begin their inquiry" first with whether Congress "provi[ded] . . . a federal cause of action" and only then turn to "whether the federal [law] at issue preempts the state law relied on by the plaintiff." *Mosaic*, 693 F.3d at 1205–06 (quoting *Schmeling*, 97 F.3d at 1343). Congress did not provide Plaintiffs a federal cause of action in the IGRA. Accordingly, "it clearly did not intend that the federal law be exclusive or removable." *Id.* at 1205 n.7. Because complete preemption is absent, Plaintiff maintains only state law claims that fail to provide federal question jurisdiction.

11

## B. The Tribe's Indispensability

The Court's inquiry does not necessarily end here. "[I]t is well-settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time [to preserve diversity jurisdiction], even after judgment has been rendered." *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1371 (10th Cir. 1998) (per curiam) (quoting *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 832 (1989)). Rule 21 only requires that if a Court drops a party, it does so "on just terms" and that party must be dispensable under Rule 19(b). Fed. R. Civ. P. 21. Thus, the Court must weigh whether to drop all claims against the Tribe and the ABC, both non-diverse parties,[10] and proceed with Plaintiff's tortious interference with contract claim against the individual Defendants: current and former ABC Members Bobby Komardley, Donald Komardley, Cheryl Wetselline, and Justus Perry, and a consultant hired by the Tribe, Tom Julian.

Rule 19(b) instructs the court to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," considering:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Davis v. United States*, 192 F.3d 951, 959–60 (10th Cir. 1999) (quoting Fed. R. Civ. P. 19(b)). First, a judgment rendered on Plaintiff's tortious interference claim in the Tribe's absence—which necessarily requires that the Court find the underlying development

---

[10] The ABC is an arm of the Tribe that possesses the same tribal immunity and non-diversity.

12

agreement a valid contract to be interfered with—would not preclude the Tribe from continuing to contest the development agreement's validity. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1240 (10th Cir. 2017) ("Generally, claim preclusion requires that the named parties in the first and second suits be identical."). On the other hand, the Tribe and its members may be prejudiced by the mere presence of a suit challenging the conduct of its business committee members; in particular, Plaintiff's tortious interference claim could invoke questions regarding how the Tribe contracts with non-tribal parties, ABC elections and tribal politics, and the Tribe's gaming priorities.

Skipping ahead momentarily to the third Rule 19(b) factor, a judgment rendered in the [Tribe's] absence likely could not adequately compensate Plaintiff for the full harm it alleges. The crux of this lawsuit concerns the Tribe's conduct in failing to meet its obligations under the Development Agreement to achieve completion of the Red River Project. The individual Defendants' presence is undoubtedly secondary to that of the contracting party: the Apache Tribe of Oklahoma.

Fourth, and favoring a finding that the Tribe and ABC are dispensable, the Court is concerned that Plaintiff may not have an adequate remedy upon dismissal. Granted, if the Tribal Court declares the development agreement valid and binding under tribal and federal law, that would also validate the Tribe's waiver of sovereign immunity and subject them to suit for breach of contract in state court. Oklahoma has a five-year statute of limitations, and Plaintiff's breach of contract claim appears to have accrued sometime in 2015 or, at the latest, upon FSS's October 25, 2016, notice of default to the Tribe. *See* 12 O.S. § 95; Doc. 8-4. A finding of indispensability would therefore leave Plaintiff with two or more

13

years to obtain judgment on the contract's validity from the Tribal Court in time to file in state court.[11] However, the Court is hesitant to risk Plaintiff's ability to recover on this timeline.

Thus, the Court turns back to the second factor, "shaping of relief[] or other measures" to lessen prejudice to the parties. Sensitive to the above concerns, Defendants' potential sovereign immunity defense,[12] and the tribal exhaustion rule—which "provides that 'as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies'"—the Court finds that FSS may proceed without the Tribe and ABC, which are dispensable parties, but only following a stay for exhaustion of Tribal Court remedies.[13] *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1376 (10th Cir. 1993) (quoting *Tillett v. Lujan*, 931 F.2d 636, 640 (10th Cir.1991)); *see also Hankins v. Fort Sill Apache Tribe of Okla.*, No. CIV-03-1191-L (W.D. Okla. June

---

[11] Unfamiliar with Tribal Court procedure, the Court is unsure whether Plaintiff could also counter-sue the Tribe in Tribal Court.

[12] Defendants raise the "strong policy that has favored dismissal when a court cannot join a tribe because of sovereign immunity." *Davis v. United States*, 192 F.3d 951, 960 (10th Cir. 1999); *see* Doc. 22, at 17–18; Doc. 30, at 19. However, that policy "do[es] not abrogate the application of Rule 19(b), whose factors th[e] court[s] ha[ve] applied to Indian tribes in several cases." *Id.* Further, the Court has yet to evaluate the Tribe's sovereign immunity defense, which rests entirely on the development agreement's validity—a matter best reserved at first blush for the Tribal Court to resolve tribal law issues.

[13] This case presents a unique situation in which the party exhausting its remedies in Tribal Court, the Tribe, is no longer a party to this case. Nonetheless, the Tribal Court's determination with FSS as a defendant will settle the development agreement's validity—which includes the validity of the Tribe's sovereign immunity waiver—thereby promoting "three specific interests . . . advanced by proper application of the [tribal exhaustion] rule: (1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary." *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir. 1997) (citing *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856–57 (1985)); *see* Doc. 21, at 13–14.

2, 2009), Doc. 21-3, at 8–13. By proceeding with FSS's tortious interference claim against the individual Defendants only if the Tribal Court has declared the development agreement valid and enforceable, the Court ensures that Plaintiff will have a remedy to recover based on this contract, be it in federal court or a subsequent state court action.

Moreover, the tribal exhaustion rule applies because although Plaintiff does not directly challenge the Tribal Court's jurisdiction, it is suing based on the development agreement, which includes "the Tribe['s] . . . express[] waive[r] [of] jurisdiction of any courts of the Tribe . . . ." Doc. 8-1, at 30. "[A] federal court should stay its hand until tribal remedies are exhausted and the tribal court has had a full opportunity to determine its own jurisdiction." *Tillett*, 931 F.2d at 641 (quoting *United States ex rel. Kishell v. Turtle Mountain Housing Auth.*, 816 F.2d 1273, 1276 (8th Cir. 1987)). The Court also finds inapplicable the Supreme Court's exceptions to the tribal exhaustion rule. *See Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856 n.21 (1985).

### III. Conclusion

Plaintiff lacks federal question jurisdiction because it asserts strictly state law claims and the IGRA's lack of a private cause of action bars its complete preemption argument. To salvage diversity jurisdiction, all claims against the Apache Tribe of Oklahoma and the Apache Business Committee are DISMISSED. Moreover, Plaintiff's remaining tortious interference claim against Bobby Komardley, Cheryl Wetselline, Justus Perry, Donald Komardley, and Tom Julian is hereby STAYED pending exhaustion of Tribal Court remedies. Plaintiff shall notify the Court within thirty days of exhaustion. Defendants'

15

Motion to Stay Pending Exhaustion of Tribal Court Remedies (Doc. 21) is GRANTED, and Defendants' Motion to Dismiss (Doc. 22) is GRANTED IN PART as discussed herein.

IT IS SO ORDERED this 16th day of May, 2018.

*David L. Russell*

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE